Are we ready, Your Honors? Yes. Yes. Good morning, Your Honors. We are here this morning because the District Court granted summary judgment in our case because it determined that no reasonable trier of fact could have determined, could have not found that the plaintiff was, or excuse me, could have found that the plaintiff was not injured and the statute of limitations had not accrued prior to 2020. We contend that the District Court incorrectly construed the inferences in Bard's favor, the moving party on the motion for summary judgment, and incorrectly applied California's discovery rule as it was discussed in the Bennett v. C.R. Bard case before this, by this court about a year ago. There's some key facts that we would like to just stress in considering the case. First, this is an IVC filter. The labeling makes clear that this device is indicated for both retrievable and permanent implantation. The label says that basically all IVC filters can have certain known complications, migration, penetration through the vena cava, fracture, and other had a failed or unsuccessful retrieval attempt in November 12th, 2011. The doctor told her he was unable to get it out, but it's in the- Sorry, so we're familiar with the facts, so can I jump to a question? Can you explain to me what the ad that she saw in 2022 told her that she didn't already know in 2020? So that's not in the record, and I can't tell you that because it's not in the record. But what we do know what was happening at that time is that there were attorney advertising saying that these filters are defective in design, and because of that, you know, they have unreasonably high complication rates. But that's not in the record. I'll freely admit that. So- She only could have discovered the wrong at a later point in time. But if we don't have those facts, then doesn't your client lose? I don't think that's correct. And let me explain why. So the first question was, did she actually have an injury? And I don't think there's evidence that she had a sufficient injury to trigger the statute of limitations in the first place. In 2020, you mean? Or when? Prior to 2020. I mean, there's no evidence she had a significant injury until really 2023, when she sees the doctor and things get more severe. But what's in the record- Can I just pause you there? So Dr. Tobey told her in 2020 that the filter was frayed and was puncturing the aorta and the muscle and all these things. And then she sees an expert who says something different. But Dr. Tobey told her things that, as I read your complaint, match what the complaint says when it's filed eventually. So I'm having trouble understanding what changed after 2020, given that the complaint looks a lot like what Dr. Tobey said in- Sorry. Yeah. What happened after 2020 that changed from what Dr. Tobey already told her in 2020? So in 2023, and this is in the record, she goes to the doctor after she starts having stomach pain. That's what changed. Yes, but the stomach pain is not in the complaint as an injury caused by the filter. That's in the deposition testimony, and that is in the record. Are you pursuing a theory that the problem here is the filter is causing stomach problems? Yes. Okay. Why isn't that in the complaint then? I don't think we have to necessarily plead everything in the complaint. We can plead that this device- I also didn't understand it to be in your brief to us that the theory is that the injury here is a stomach injury. Can you point to something that said that was your injury in your brief even to us, that this is the theory of the cases that the filter is causing stomach problems? Your Honor, we do make clear that that's what triggered her to go and talk to an attorney. It was a combination of two things. It was seeing the attorney advertising her about these IBC filters. She put that, and her daughter at the time saw the attorney advertising, realized she was having stomach pain, and that's what made her think maybe this filter is- I understand you have made an argument that subjectively she wondered if the stomach pain was being caused, but I didn't see you anywhere suggesting that any doctor ever said that you actually have a claim that this filter is causing stomach pain, that no doctor ever told her that, did they? That is correct, that no doctor has said that. And so that doesn't seem to be the theory by which you are pursuing a case here, that the filter- I mean, you don't have any evidence in summary judgment that the filter is causing a stomach problem. Well, and I don't- Your Honor, let me make clear. I don't think we had to show that. What we said, the question here is, what does the evidence show is when did she have an injury sufficient to trigger her cause of action? There is no question that prior to 2020, there is nothing in the medical records that says she's symptomatic in any way whatsoever. That's fine. I'm looking at 2020 forward, because that's what the district court did too, it said at least as of 2020. So let's talk about 2020. Okay. Okay. So in 2020, though, she does have the same injury she alleges in the complaint, right? No. No. But there's nothing in the records, let's say prior to 2022, that says she is symptomatic in any way whatsoever. But is the only symptom stomach pain? Yeah. Well, that's the only symptom that triggered her to go talk to an attorney and file the lawsuit. And if the stomach pain, if there's no evidence that the stomach pain is caused by the filter, then I'm not sure you can use the symptom of stomach pain as the hook for the harm from the filter. Can you? What I'm saying, Your Honor, is that is the only thing that could be argued in this case to be a symptom from the device. And it was the defendant's burden to establish that she had a sufficient injury to trigger the cause of action in the first place. Don't you need to know that the injury was wrongfully caused as well? Isn't that element of the claim? Yes. That's a step we haven't got to yet. And that's the Bennett case, which is directly on point with this case. Bennett is unpublished, so try to use published cases. Okay. Well, let's talk about the cases the Bennett case refers to then. What is clear is that you have to know that the injuries were caused by wrongful conduct, which means when you look at it, when you have a label that says these things, all filters are known to fracture, perforate, migrate, and do these various issues, and that's across the board, and somebody knows they then have one of those complications, that is not sufficient to put them on notice that the defendant acted wrongfully. What do you think wrongfully means under California law? That there's a design defect with the product. So as a legal matter? Yes. Doesn't California law say that knowing that you have a legal claim isn't the point? The point is having the facts of the injury? You have to have sufficient information. No, it's not just the facts of an injury. And that's the whole discussion of case law within the Bennett decision, even if we can't talk about the Bennett decision directly, is that it's not sufficient just that you know you were injured. It's you have to know that you were injured and the injury was caused by wrongful conduct of the defendant, which in this case is there was a defect, there was a malfunction of the device. In other words, due to a defect in the design of the product. And doesn't Jolly v. Eli Lilly, a California Supreme Court case, say that wrongdoing is the lay meaning? It just means a person or the company caused the injury, not that there's actually a legal claim. I mean, California law I think is pretty clear that knowing of wrongdoing does not mean knowing that you have a legal theory. I don't think that's correct. And it's a matter of causation. You have to know from the facts, have sufficient information that the injury in this case was caused by wrongful conduct. We said that wrongful conduct means that there was a malfunction of the device. It did something that it's not supposed to do. In this case, the instructions for use tell everybody that all of these filters do it. And when she talked to her doctors. California law saying that the fact that there are warnings don't get you out of the idea that you're injured by the product. Even if there's a warning that says this could be a complication, if you end up with that complication, you still know you have an injury that triggers the statute of limitations under California law. This court's opinion in Bennett says exactly the opposite. But Bennett's unpublished. So what else? Well, I don't have them directly in front of me right now, but the decisions that the Bennett court relied on in entering that opinion, they make clear that if you know, if the instructions for use basically say this can happen to anybody. But doesn't that instruction, that doesn't undermine the fact that if those things happen, we've got an effective, you know, like the product is not functioning as it should. Right? You would agree with that? Let me make sure I understand you. Those product that IFU says, this just happens. It's inherent to the use of all of these devices. Not just ours. This happens with all IBC filters. So it's not saying that this, it's suggesting this is not a defect. It's not doing something it's not supposed to do because all of these filters do it. Can you tell me in the record where, because that's not what my recollection was. Can you tell me in the record where that language is? Like, we're going to put this in your body and it's supposed to do this good thing for you. And all of these things do all this bad stuff too. So it's the actual instructions for use that we cite within the brief, Your Honor. That that's where it says what the product does. And I can find that for Your Honor. And that says that it basically breaks down and it starts puncturing your aorta and your muscles. And like, that's a, that's a key factor or a normal factor of this device. Yeah. So it says the, and it's 2ER198 and 2ER197-198. And it's the instructions for you state that complications may occur at any time during or after the procedure. Fractures are known complications of being a cave of filters. May occur is like it might happen. And this would be a complication, but not that it always happens. And if I may continue, filter fractures are known complications of being a cave of filters, movement, migration, or tilt are known complications of being a cave of filters. It's not expected. It doesn't say every single one will puncture your aorta. And so by putting this in yourself, you know, that's going to happen. It's just a possible may, may occur complication. Right? Well, I think that's what it's saying is we know this happens and it's not an unexpected for it to happen. Okay. And so then California has Norgart v. Upjohn. That's the case about prescription drugs that have warnings that they can cause suicide. And the court says the fact that it was in the warning label and disclose the risk puts them on notice and you still have the statute of limitations as soon as the suicide happens. It doesn't matter that you have to wait or learn something. Same with Snow v. Robbins. Also where there's warnings in the label about the IUD that says you might get pregnant anyway. The court says, once you get pregnant, you better sue then. You don't wait until you find out there's some other problem. I think you can distinguish those cases here for a couple of reasons. One, she's seeing her doctors throughout this time period. Right? Her doctors are telling her the product's fine. It's not causing you any problems whatsoever. We're going to leave the product in. It's just a good thing for you. Right? And That's not what Toby says in 2020. He's pretty worried. He indicates he's worried about potential future complications. He doesn't say she has any current complications. And he sends her to a specialist. Robbins matches the complaint as what you say is the injury. He sends her. He then sends her to a specialist because he's worried about future complications. Right? The specialist, Dr. Zuniga and Farley, they say they don't say anything about current physical symptoms. In fact, And then in 2023, what do they say that's different than that situation? Let me just finish because I think this is important. They say what's happened here is uncommon. She's asymptomatic from what's happening. This is approved for permanent use and it's just going to be left that way. So again, And in 2023, she's still asymptomatic from the filter. She might have stomach pain, but that's no one saying it's related. So what's different in 2023 from the doctors? Well, she believes it's related. Okay. But it has to be objectively, I mean, you need evidence to win your case. So what is the medical evidence that she has a problem in 2023 from the filter that she didn't already have in Which would be produced when we get to the point of expert disclosures. You've already had, aren't we at summary judgment? The summary judgment on statute of limitations, which is their burden to establish the injury had happened, not ours. And they did not establish there was ever an injury in this case prior to 2022. It's not our burden to prove that the injury later happened. It's their burden to when the injury happened, not ours. But they have evidence that Toby says this was all occurring already in 2020. What you're saying in the complaint is the injury was already existing in 2020. So if you're saying you are later going to come up with a different. No, what I'm saying is at the appropriate time when experts disclosures are due, we're going to produce evidence that shows she is symptomatic, which developed sometime around 23 or 24 from the filter struts perforating into her intestine. So your theory is going to be a stomach injury ultimately?  Where is that in your brief? I know you said in the brief that the reason she started worrying was the stomach, but where in your brief, did you say that your medical theory of this case is going to be a stomach injury? I didn't, Your Honor, because I don't think we have to get there. Our view is it's the defendant's burden to prove there was an injury, something that is sufficient to start the cause of action having accrued, separate from the discovery rule, right? And our contention is there is no evidence prior to, you know, certainly prior to 2023 of any injury. Even the Dr. Toby says, never says she's symptomatic, never says she has a problem. He says problems may develop in the future, but they haven't yet. In 2023, what did the doctor say that shows differently than Toby that there is now an injury? Saying we don't have that yet, we're going to get that in discovery later. Is that your answer? My answer is that comes from expert disclosures where we have experts who evaluate her case. Okay, let's pause you unless anyone has questions. We'll put a minute on the clock for rebuttal later, but let's hear from the other side. We're over your time. Richard North. May it please the court. My name is Richard North and I represent the bar defendants, all of the defendants in this case. Excuse me. As the court recognizes, this is a statute of limitations case. It's a little unusual because the defense is almost completely established by the medical records in this case. And as the court has already indicated, you're very familiar with the facts. So I'm going to sort of throw out my outline and address the three main issues I think I've heard you all discuss. That's the IFU and its role here, the concept of what the harm is, and number three, the wrongful conduct that you mentioned. Turning to the IFU, I would respectfully submit that the IFU is a little bit of a red herring here. And that's because it really cannot affect whether Ms. Asperius had inquiry notice to investigate. That's because she never saw it. Instructions for use or the IFU is put in the package and delivered with the filter for the doctor to use. It's addressed to the doctor. So she would never have seen that. And even though these complications are listed in the IFU, the medical community still considers them malfunctions. And the record shows that in this case. Dr. Weiss, the original implanter, testified in his deposition that he considered the migration and tilt that he discovered in 2012 to be adverse events. In other words, a malfunction of the filter. Dr. Tobey in 2020 saw this perforation, the aorta, the duodenum, and he said in his record quotes, he is very concerned. He clearly considered that a malfunction. So just because Dr. Farley, Dr. Tobey wasn't a specialist and referred Ms. Asperius to Dr. Farley, who then reassured Asperius that there was nothing to worry about. She was asymptomatic. This is not an uncommon event. And the filter needed not to be replaced. Why doesn't that create a genuine issue of material fact as to whether Asperius should have known what was put on notice in 2020 as opposed to later? Well, what he was, he wasn't disputing the fact that the filter had tilted, that the filter was, I think, parallel. He wasn't disputing the fact that it had penetrated. He said you don't have anything to worry about, essentially. Right. Right. But it was enough for them to file the complaint in 2023. That's because after she saw she saw an ad afterwards that made the connection for her that maybe there's something some wrongful conduct in the manufacturer design of the filter. And that's when she sued. There's no dispute about the fact that she did not see evidence of the wrongful conduct until 2023. But that does not excuse what happened here, because the California cases are very clear. She had a duty to investigate. I want to drill down on that for a second, because the way that I I've been sort of really honing in on what is inquiry notice even mean, it seems like there's a couple of parts to it. First, you have to have some sort of suspicion that something bad is going is happening. Right. That's part one. And then part two, there has to be some indication that if you actually did an investigation, you would learn something that would aid you in figuring out whether there is a claim or not. Right. Yes. So even if we accept that here, she had indication that something wrong happened. Right. Because there's this thing in her that seems to not be doing what it's supposed to be doing. Yes. What evidence do we have in this record to indicate the second part of that of like if she had started asking more questions than she did, what would she have learned? What do we know about that in terms of this factual record? There's evidence in the factual record, and I don't have the site right with me. I think it's in my notebook there. But there's evidence in the factual record of all the attorney advertising that was going on throughout this period. She could have spent five minutes on the Internet and figured out. At that time, there were over 8,000 cases against Bard with filters between 2015 and 2020. The multidistrict litigation in the Ninth Circuit in front of Judge Campbell in the District of Arizona. There was another multidistrict litigation involving IBC filters in Indiana against another manufacturer. There were thousands of cases in state court up the coast in Alameda County against the third manufacturer. Attorney advertising was rampant. She may not have seen one until 2022 or 2023, but they were there long beforehand. And having known in 2020 that her filter was malpositioned, that Dr. Tobey was very concerned. She had a duty to investigate at that point in the Jolly case. And even though Dr. Farley had said otherwise, so that duty still endures and persists, even though a specialist who knows more than Dr. Tobey says there's nothing to worry about. But Dr. Farley was talking to her about treatments. He was not denying the fact that the filter had malfunctioned. He accepted the fact, but he was talking to her about future treatment. And in this particular case, the fact that there was the malfunction. The plaintiff's filed a complaint based on that, even though she was asymptomatic, even though she hadn't gone for further procedures. I think that makes a lot of common sense. I mean, I do track the logic of your argument, but I'm struggling with the standard of review that we apply here. California has said that this timing of when somebody should have known as a fact question. So for you to win, the facts have to establish as a matter of law that she needed to inquire earlier. And if we were at summary judgment, so we're supposed to view the facts in the light most favorable to her. So I'm struggling a little bit with that of like, I think there are facts that support the argument that you're making, but I'm not sure that the facts say that as a matter of law, that's the only way to look at this. I understand what you're saying, Your Honor, but I think we look at these facts. First of all, we have the fact that she definitely knew that the filter was malpositioned. She had a duty under the law to investigate. The record is clear, and the district court mentioned this in his summary judgment order. She did absolutely nothing to investigate. And it is her burden to show under California law that she has exercised due diligence to investigate the cause. In fact, under California law, the Supreme Court has held that there is a presumption that someone who knows of some injury or harm or malfunction, there's a presumption that they know of the wrongful conduct, and they have to come in and show you what they did to try to investigate and couldn't find out. It seems to me that the best way for you to win this argument is for it to be true that just having something inside of you that is not working properly is injury whether or not you are symptomatic. And is that the law? It was enough of the law for them to file a complaint on that basis. They took the position in the complaint that even though it was asymptomatic, they knew that. That's an answer because you can just by choice, you know, choose to file a lawsuit whenever you want to. But here we're talking about was she by law required to file by some period of time. So that comes down to is injury in this context, just having something that you have reason to believe has a problem and it's inside your body running around in there, but you're not having physical symptoms yet. Is that enough to establish injury or does she also need the physical symptoms? I don't think she has to establish injury in this particular circumstance because you have a clear malfunction and they alleged in the complaint that they were seeking damages for medical monitoring to monitor the progress of the filter. That would be future imaging, future appointments with the cardiologist or the interventional radiologist. So that's certainly a cognizable injury I would submit based upon the fact that it is malpositioned. Can I ask you, so there's a case push if you Philip Morris in the California Supreme Court that talks about when there's like distinct injuries. So I think today your friend on the other side is saying, okay, she knew about the filter near the aorta heart, but we're actually going to pursue a theory of stomach injury later down the road with these expert declarations or whatever. Can you respond to that? Because I actually think he could have a different statute of limitations for the stomach if the stomach symptoms didn't come till later. Is it okay for him to develop that evidence later as he says though and why doesn't that mean you're going to lose because we don't know yet about the stomach? Well, I think your honor is correct that under push there is an argument. He has a pretty good argument to some extent that that would be a separate injury triggering the statute differently perhaps for that injury. Although it is not clear. We actually argued the same issue in the Bidick case, but the opinion did not ultimately come turn on that. And there was some talk in the Bidick case by the panel about whether to certify the two separate injury issue to the California Supreme Court and we even submitted a supplemental briefing on that. But putting that aside. Okay, I want to just ask again then because I'm not sure what you just answered. If they want to pursue a stomach injury and expert discovery is not done yet, then why are we not prematurely discussing the statute of limitations? I mean, maybe they're right. They're not time barred yet on the stomach injury theory. And so we can't actually dismiss this case the way the district court did. Well, first of all, as you pointed out earlier, there's not a word in their complaint about an injury related to stomach. And I would submit Iqbal Twombly in that line of cases, that should have been in the claim if that's part of their. They didn't file a 12B6. What's that? Did you file a 12B6 motion? No. We answered, right? And you went straight to summary judgment. Right. And that's where all this evidence about stomach injuries have. Well, there certainly was nothing in the complaint about that. My recollection is the stomach injuries did not come up until as a defense on their part to our motion for summary judgment is when they raised the specter of the stomach injuries. But they had a duty to put that in their complaint, number one. Number two, there's not a single doctor, as the court pointed out, that relates those symptoms to the filter. But he is now saying that they're going to do that later in expert discovery if the case doesn't get ended on statute of limitations grounds. And if a stomach injury theory would not be barred by the statute of limitations, then why shouldn't they have the opportunity to try that before we figure out whether there's a statute of limitations? Your Honor, I believe they had a duty to come forward with some evidence that would correlate the stomach injuries to the filter and the summary judgment stage. They did not put anything in the record, as I recall. There's no medical evidence associating the two. They didn't try to amend their complaint. They just sort of raised it in briefs and arguments. And the judge in the district court summary judgment order said, no, you didn't allege this in the complaint. This isn't part of your claims here. Number two, no doctors. So you are relying on forfeiture for the stomach, forfeiture or waiver, some sort of... Yes, absolutely. ...to lead on the stomach theory into our position. I'm sorry. No, go ahead. Well, then let me ask you, counsel, paragraph 107 of the complaint says, as a proximate result of the barred defendant's breach of their implied warranties, plaintiff has suffered and will continue to suffer significant medical expenses, pain and suffering, mental anguish, loss of enjoyment of life, and other losses proximately caused by the device. Doesn't mention stomach problems, but isn't that broad enough to encompass additional possible injuries? I think it's debatable whether that's sufficient under the pleading standards of Iqbal Twombly, to be honest, Your Honor. But they could have amended their complaint. They could have submitted evidence at the summary judgment stage. I think the cases from the Ninth Circuit and every circuit or legion that somebody facing a summary judgment motion in a district court can't sit quietly and then raise issues on appeal and try to submit evidence or say, I'm going to submit evidence later. I don't think that's how the system works. And so I do believe there's been a waiver or forfeiture of that argument. The Jolly Court on the wrongful conduct issue, I think, puts it very appropriately and it's applicable to this case. The Jolly Court said something to the effect of someone who has reason to have a suspicion, as you mentioned, cannot sit back and wait for the evidence to come to them. They have to go and conduct a reasonable inquiry and look for the evidence themselves. And that's why I think as a matter of law, this record supports the summary judgment because the plaintiff clearly knew in 2020 of the situation with the filter. She knew that one of her doctors was upset concerned. She knew that it was malpositioned. And the record is devoid of a single effort she ever made to conduct the reasonable investigation that she had the duty of to do. So as a matter of law, I think that would support the summary judgment right there. If the court doesn't have any further questions. Thank you. Thank you. Let's put a minute on the couple of brief points. One, I wanted to point out, Dr. Weiss actually said that this was not an adverse event, that this filter just basically been converted from being temporary to permanent and that it wasn't causing her any issues. That's what he told her. I want to point out the Nevada Power Co. and Masanto case that we cite in the briefing that makes clear that if the evidence could support an inference that the injury could have been from a innocent cause, then summary judgment is inappropriate. In this case, the innocent cause would be, look, just an inherent risk of any IBC filter, whether it's BARDs or somebody else, that these things perforate, that they migrate, they fracture, they do these various things. And there's nothing wrong with BARD-specific filter, you know, versus anybody else's. These things just happen. That would support an inference, as laid out in the labeling, and as she was hearing from her doctors, that this is normal. This happens. It happens with everybody. It's not an adverse event. It's not causing you any problems. And I also want to point out that, look, she did investigate things. She was going to her doctors. The general doctor, who probably has limited understanding of IBC filters, referred her to a specialist. The specialist told her not to worry about it, that this was very common. This happens. Over your time, so try to wrap up, please. Sure. Just on reasonable suspicion, you know, the Jolly Court, I would note, look, she had no reason to be suspicious of what was happening here. The doctors were telling her, this happens. It just happens. It's not causing you any problems. No need to... on that question is your argument. That's all you need to show for our purposes. Yes. There are sufficient facts here showing that the inference should have been made in her favor versus BARD's favor, that there wasn't, you know, a reason to be suspicious about what was happening here or enough reason to be concerned that there was wrongful conduct of what caused her situation. And again, I'll just reiterate, it was not our burden to establish there was an injury sufficient to trigger the statute of limitations. That's BARD's burden. There's nothing in the records that have been produced identifying any sort of symptom from this device versus just having a malfunction at this time. But when they came forward and said, you knew in 2020 the same thing that the complaint says. So you had the information and so you're BARD. You didn't come forward and say, actually, no, we're going to have an evidence of a stomach theory and that's going to be what we're pursuing and that's not time BARD. So I'm still struggling a bit with why you didn't need to say that to counter their summary judgment motion on the statute of limitations. Because we hadn't even been allowed to get to that point yet. This motion summary judgment was filed before we got in. Well, so did you ask for more time for discovery? I mean, if it's going to be your expert, you could have put in whatever you wanted. Well, after we had time to get discovery. But so did you ask for an extension? Did you say we need more discovery before summary judgment on this? We did not. Because it's not our burden to prove when the injury occurred. It's BARD's, not ours. They have to prove when the injury occurred, not the plaintiff. And there's nothing in the record saying the injury occurred prior to 2023. Thank you both sides for the helpful arguments. This case is submitted. Thank you. And I think we should take a five minute break before the last two cases on the calendar. All rise. Court will stand and reset for five minutes.
judges: FRIEDLAND, FORREST, TUNG